IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| ACCESS NOW, INC., on behalf of its members; R. DAVID NEW; and STEPHEN THÉBERGE, <br><br> Plaintiffs, <br><br> v. <br><br> SPORTSWEAR, INC. <br><br> Defendant. | Civil Action No. <br><br> COMPLAINT FOR INJUNCTION |

**COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
<u>DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)</u>**

Access Now, Inc., R. David New, and Stephen Théberge (collectively, "Plaintiffs") seek a permanent injunction requiring a change in Sportswear, Inc.'s ("Defendant" or "Prep Sportswear") corporate polices to cause Prep Sportswear's website to become, and remain, accessible to individuals with visual disabilities. In support thereof, Plaintiffs respectfully assert as follows:

**<u>INTRODUCTION</u>**

1. "Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013), *available at* https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf (last accessed June 23, 2017).

2. Prep Sportswear is the largest direct to consumer ecommerce provider of print-on-demand, customizable athletic apparel. Through its online marketplace, www.prepsportswear.com ("Website"), Prep Sportswear sells over 650 apparel and accessory items for nearly every sport.

3. Prep Sportswear owns, operates, and controls the Website.

4. At the Website, consumers can research and purchase apparel and accessories featuring their favorite teams, colleges, golf courses, and military branches, and arrange for home delivery of their custom orders. Consumers may use also the Website to connect with Prep Sportswear on social media, using sites such as Facebook, Twitter, and Pinterest. Consumers may also access other important information on the Website, like FAQs, Order Tracking, Return Policies, Terms of Use, and a Privacy Policy

5. Unfortunately, Prep Sportswear denies approximately 7 million[1] Americans who are visually impaired access to its Website's goods, content, and services because the Website is largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

6. Screen reader programs convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, education, and meal delivery have become commonplace.

7. Plaintiffs bring this civil rights action against Prep Sportswear to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits

---

[1] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed June 23, 2017).

of its services, facilities, privileges and advantages; (2) not provide such persons with benefits that are unequal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

8.      By failing to make its Website available in a manner compatible with computer screen reader programs, Prep Sportswear, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services, all benefits it affords nondisabled individuals, thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

9.      Because Prep Sportswear's Website has never been accessible and because Prep Sportswear does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiffs invoke 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring:

   a) that Prep Sportswear retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Website so it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");[2]

   b) that Prep Sportswear work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be

---

[2] Department of Justice ("DOJ") has utilized the WCAG 2.0 Standards as a benchmark for satisfying the requirements of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iii). The WCAG 2.0 Guidelines provide "recognized voluntary international guidelines for Web accessibility," *see, e.g.*, Department Commentaries, 75 Fed. Reg. at 43465, and DOJ, through myriad enforcement actions, has consistently used the WCAG 2.0 Level AA Standards to ensure the full and equal enjoyment of websites for persons with disabilities. In 2013, DOJ described that WCAG 2.0 are "readily available, well-established, consensus-based guidelines for delivering Web content in an accessible format." *See National Federation of the Blind v. HRB Digital, LLC and HRB Tax Group, Inc*., No. 1:13-cv-10799-GAO, Doc. No. 39, ¶ 5 (D. Mass. Dec. 11, 2013).

    given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c) that Prep Sportswear work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Prep Sportswear's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d) that Prep Sportswear work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Prep Sportswear's Website continues to comply with WCAG 2.0 AA on an ongoing basis; and

e) that Prep Sportswear work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems.

10. Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause a website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

11. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

12. Prep Sportswear purposefully targets and solicits business from Massachusetts residents through its Website.[3] Because of this targeting, it is not unusual for Prep Sportswear to

---

[3] For example, consumers can buy sweatshirts, hats, and t-shirts branded with their favorite university's logo and name, such as the Brandeis Judges from Waltham, Massachusetts.

conduct business with Massachusetts residents. In fact, the opposite is true: Prep Sportswear derives substantial revenue from repeated transactions in Massachusetts, having more than a slight effect on the Commonwealth's commerce as a result.

13.     Venue in the District of Massachusetts is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff Théberge's claims occurred.

14.     Assignment to the Eastern Division is appropriate pursuant to Rule 40.1(D) of the Local Rules of the United States District Court for the District of Massachusetts.

## **PARTIES**

15.     Plaintiff Access Now is a non-profit organization that provides advocacy services on behalf of blind and other disabled individuals who are members of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Access Now has members representing 47 states, including residents of the Commonwealth of Massachusetts.

16.     One of Access Now's primary purposes is to ensure that public accommodations are accessible to and useable by its members, and to ensure that its members are not discriminated against because of their disabilities, or denied the benefits of the services, programs, and activities of public accommodations.

17.     Access Now furthers this mission in a variety of ways, including seeking compliance with the ADA through education efforts to correct violations when found, and when necessary and appropriate, in litigation to require persons and entities in violation of the ADA to comply with the Act.

18. Access Now also devotes significant resources to raise awareness and increase opportunities for people with disabilities. For example, Access Now and its members host and/or sponsor events such as "Lights Out," a dining in the dark experience. Access Now and its members also host and/or sponsor Biz-Ability Luncheons recognizing organizations and individuals who have improved awareness about people living with disabilities, enhanced independent living, and developed assistive technologies, among other important contributions.

19. Access Now has strongly advocated for access to the online goods, content, and services that various industries make available via the Internet, but which are often incompatible with the screen reader programs, and other assistive technology, its members use. For example, Access Now filed suit against HSBC North America Holdings, Inc., alleging the bank's website was not compatible with screen reader software, thus blocking blind and visually impaired users from fully accessing the full range of personal online banking services available to sighted users. (*Frazier, et al. v. HSBC North America Holdings, Inc.*, No. 2:16-cv-01665-AJS (W.D. Pa. Nov. 2, 2016) (Doc. No. 1)). In addition to financial lending, Access Now has pursued increased accessibility to the online content and services offered by the hospitality industry (*Frazier, et al. v. Omni Hotels Management Corporation*, No. 2:17-cv-00012-AJS (W.D. Pa. Jan. 4, 2017) (Doc. No. 1)) and online retail industries (*Depina, et al. v. Keurig Green Mountain, Inc.*, No. 1:17-cv-10236-NMG (D. Mass. Feb. 13, 2017), among others.

20. Plaintiff New is, and at all times relevant hereto, has been a resident of the State of Florida. Plaintiff New is, and at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff New is a member of and serves as President of Plaintiff Access Now.

21. Plaintiff Théberge is and, at all times relevant hereto, has been a resident of Bristol County Massachusetts. Plaintiff Théberge suffers from cataracts and glaucoma. His vision disability has worsened since birth, rendering him blind despite multiple surgeries. He is a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff Théberge is also a member of Access Now.

22. Prep Sportswear is a Washington corporation with its principal place of business at 2211 Elliott Avenue, Suite 601, Seattle, Washington 98121.

23. Prep Sportswear's Website is a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

24. While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

25. Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet. Unless websites are designed to be read by screen reader software, individuals suffering visual impairments are unable to fully access websites and the content and services they make available.

## I.     Prep Sportswear's Online Content

26.     Prep Sportswear's Website allows consumers to browse, research, and purchase more than 650 apparel and accessory items featuring their favorite teams, colleges, golf courses, and military branches, and arrange for home delivery of their custom orders.

27.     Consumers may use also the Website to connect with Prep Sportswear on social media, using sites such as Facebook, Twitter, and Pinterest.

28.     Consumers may also access other important information on the Website, like FAQs, Order Tracking, Return Policies, Terms of Use, and a Privacy Policy

## II.    Harm to Plaintiffs.

29.     Access Now has standing as an association on behalf of its members. Access Now's members, including Plaintiffs New and Théberge, have standing to sue as individuals because they have been, and continue to be, harmed by Prep Sportswear's discriminatory policies. Advocating on behalf of its members is germane to Access Now's interests of ensuring that important tools of daily life, such as websites, are accessible to people who are blind or visually-impaired.

30.     Plaintiff New has visited Prep Sportswear's Website. Unfortunately, because of Prep Sportswear's failure to build its Website in a matter that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use.

31.     Mr. New has attempted to access the Website with the same screen reader programs he uses to browse the Internet, but found them to be largely unusable due to various accessibility barriers. For example:

   (a) Multiple buttons on the Website are missing proper labels sufficiently describing their action to a screen reader user. Without a proper label, screen reader users do not know what happens after clicking a button.

   (b) Error messages failed to provide Mr. New with correct information.

   (c) Several areas of the Website lacked alternate text, which is necessary for a screen reader to describe the nature or contents of visually displayed content in an audio format.

  32. Plaintiff Théberge has visited Prep Sportswear's Website. Unfortunately, because of Prep Sportswear's failure to build its Website in a matter that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use.

  33. Mr. Théberge attempted to access the Website with the same screen reader program he uses to browse the Internet, but found it to be largely unusable due to various accessibility barriers. For example,

   (a) The Website did not properly interact with Mr. Théberge's screen reader so as to allow him to navigate through the list of schools for which he could purchase apparel.

   (b) In fact, there was no way for his screen reader to even access this list of schools, blocking him from this large section of Prep Sportswear's online marketplace.

  34. As a result of personally visiting Prep Sportswear's Website and from investigations performed on their behalf, Plaintiffs are aware the Website includes at least the following barriers blocking its use by consumers with visual disabilities:

   (a) The Website does not provide a text equivalent for every non-text element;

   (b) The Website does not convey information about the meaning and structure of content by more than the visual presentation of that content;

(c) The Website does not provide a correct reading sequence on pages where the sequence in which content is presented affects its meaning;

(d) In many cases, the visual presentation of text and images of text does not have a contrast ratio of at least 4.5:1;

(e) Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

(f) Not all functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function depends on the path of the user's movement;

(g) Not all functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes;

(h) The Website does not always provide a mechanism to bypass blocks of content that are repeated on multiple web pages;

(i) Web pages lack titles that describe their topic or purpose;

(j) The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

(k) Not all headings and labels describe their topic or purpose;

(l) In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(m) The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

35. These barriers, and others, have denied Plaintiffs full and equal access to all of the services the Website offers, and now deter them from attempting to use the Website. Still, Plaintiffs would like to, and intend to, attempt to access Prep Sportswear's Website in the future. Plaintiffs' disabilities, and the challenge of traveling to and shopping in traditional brick-and-mortar accommodations as a result of them, make it particularly likely they will return to the Website in the future to purchase goods from the comfort of their homes, and/or to review the Website for compliance.

36. If the Website were accessible—i.e. if Prep Sportswear removed the access barriers described above—Plaintiffs could independently shop for and research products via Prep Sportswear's Website.

37. Though Prep Sportswear has centralized policies regarding the maintenance and operation of its Website, Prep Sportswear has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

38. The law requires that Prep Sportswear reasonably accommodate Plaintiffs' disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

39. Plaintiffs' above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG

2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited June 23, 2017)

40. All parties have been, and in the absence of an injunction will continue to be, injured by Prep Sportswear's failure to provide its online content and services in a manner that is compatible with screen reader technology.

### III. Prior Notice to Sportswear, Inc.

41. Prep Sportswear has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

42. Indeed, as the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts, it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

### IV. The Parties have No Administrative Remedies to Pursue.

43. There is no DOJ administrative proceeding that could provide Plaintiffs with Title III injunctive relief.

44. While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiffs with relief.

45.  Plaintiffs allege violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

46.  Resolution of Plaintiffs' claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Sportswear, Inc. offers content and services on its Website, and (b) whether Plaintiffs can access the content and services.

## SUBSTANTIVE VIOLATION
### (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

47.  The assertions contained in the previous paragraphs are incorporated by reference.

48.  Prep Sportswear's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

49.  In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Prep Sportswear does not provide Plaintiffs with full and equal access to its Website, it has violated the ADA.

50.  In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. Id.; see also MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

51. Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

52. Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

53. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

54. By failing to provide its Website's content and services in a manner that is compatible with auxiliary aids, Prep Sportswear has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

    (a) denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on Prep Sportswear's Website;

    (b) affording individuals with visual disabilities access to the Website that is not equal to, or effective as, that afforded others;

(c)   utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d)   denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)   failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

55.   Prep Sportswear has violated Title III by, without limitation, failing to make its Website's services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of its Website, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

56.   Prep Sportswear has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Website to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

57.   Making its online goods, content, and services compatible with screen reader programs does not change the content of Prep Sportswear's Website or result in making the Website different, but rather enables individuals with visual disabilities to access the Website Prep Sportswear already provides. See MIT Statement of Interest, p. 20; Harvard Statement of Interest, p. 20.

58.     Prep Sportswear's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiffs and other individuals with visual disabilities.

59.     Plaintiffs' claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

60.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

1.      A Declaratory Judgment that at the commencement of this action Sportswear, Inc. was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Sportswear, Inc. took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

2.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Sportswear, Inc. to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Sportswear, Inc. has adopted and is following an institutional policy that will in fact cause Sportswear, Inc. to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs is described more fully above.

3.      Payment of costs of suit;

4. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

5. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: June 29, 2017                                    Respectfully Submitted,

*/s/ Jason M. Leviton*
Jason M. Leviton (BBO# 678331)
Block & Leviton LLP
155 Federal Street, Suite 400
Boston, MA 02110
Phone: (617) 398-5600
Fax: (617) 507-6020
jason@blockesq.com

Benjamin J. Sweet (PA Bar No. 87338)
bsweet@carlsonlynch.com
*Pro Hac Vice* admission to be sought
Kevin W. Tucker (PA Bar No. 312144)
ktucker@carlsonlynch.com
*Pro Hac Vice* admission to be sought
CARLSON LYNCH SWEET KILPELA
& CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243
Fax: (412) 231.0246

*Counsel for Plaintiffs Access Now, Inc., R. David New, and Stephen Théberge*